815 A.2d 816

**R.A. PONTE ARCHITECTS, Ltd.,**

v.

**INVESTORS' ALERT, INC., et al.**

**No. 537, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Jan. 29, 2003.

Stephen H. Ring of Rockville, (Philip L. Feliciano of Kensington, on the brief), for appellant.

Robert G. Lawman, Jr. of Houston, Texas (Patrick Donahue of Annapolis, on the brief), for appellant.

MURPHY, C.J., KENNEY, and BARBERA, JJ.

BARBERA, J.

In this appeal we decide a question of first impression—whether a private cause of action may be brought in Maryland to enforce the prohibition in the Telephone Consumer Protection Act of 1991 ("the TCPA" or "the Act"), against the transmission of unsolicited commercial facsimiles. We hold that the General Assembly has not accepted the jurisdiction conferred upon the states by the TCPA, and, thus, such private actions may not be brought in Maryland state courts.

The underlying facts of this case are not in dispute. On several occasions during the summer of 2000, appellant, R.A. Ponte Architects, Ltd., received on its fax machine unsolicited copies of an investment newsletter entitled "Investors' Alert." The transmissions were sent free of charge, and encouraged the purchase of stock in select corporations and solicited subscription to future issues of the newsletter.

On October 24, 2000, appellant filed a class action complaint in the Circuit Court for Montgomery County, naming as defendants appellees, Investors' Alert, Inc. and Access Financial Consulting, Inc. Appellant alleged that appellees had

violated the TCPA, which prohibits, *inter alia,* the use of a telephone fax machine to send unsolicited advertising to another fax machine. 47 U.S.C. § 227(b)(1)(C) (1991). Appellees thereafter filed a motion to dismiss and a supporting memorandum of law, arguing that appellant's complaint failed to state a claim upon which relief can be granted. Appellees specified that Maryland law "does not provide for a private cause of action," and that, had the Maryland General Assembly intended a private cause of action to exist, its intent would be reflected in the language of Maryland's law prohibiting the intentional electronic or telephonic transmission to a fax machine for the purpose of commercial solicitation. *See* Md.Code (1975, 2000 Repl.Vol.), § 14–1313 of the Commercial Law Article ("CL").

Appellant opposed the motion to dismiss. Appellant mounted three arguments in support of the validity of its claim under the TCPA: (1) the Supremacy Clause of the United States Constitution vests jurisdiction over private causes of action in state courts; (2) statutory language enabling a private cause of action is not required in order for a plaintiff to file suit; and (3) CL § 14–1313 cannot be construed to mean that no private cause of action exists when the statute is silent on the issue.

The instant case was one of two such cases then pending in the Circuit Court for Montgomery County.[1] The cases presented identical motions to dismiss, which, at the request of appellant, were jointly heard. At the hearing's conclusion, the court granted appellees' motion to dismiss, stating:

> In each of these cases [*i.e.,* the instant case and the *Nixon* case], the Plaintiffs are bringing private causes of action under the Telephone Consumer Protection Act....

---

1. The other pending case was *Nixon v. Loyd* (circuit court case no. 216130V). In *Nixon,* plaintiff Donald H. Nixon sued the owner and sole shareholder of Investors' Alert, Inc., Thomas E. Loyd, and others, raising claims similar to those in this case.

▬▬▬▬▬

The Defendants have moved to dismiss on the basis that no private cause of action exists within the State of Maryland to allow these claims to proceed.

The language in the [TCPA] that [counsel for appellant] has referred to ... states that "Private right of action, a person or entity may, if otherwise permitted by the laws or rules of the Court of a State, bring in an appropriate Court of that state and [sic] action," and that is the basis for bringing the action in these cases.

Commercial law article Section 14–1313 addresses the basis for bringing causes of action that the Plaintiffs seek to bring in these lawsuits.

The attorney general is empowered to bring the causes of action that exist under the state of the law in Maryland. There is no private cause of action with respect to these claims.

From the dismissal of its case, appellant has appealed,[2] and presents the following question:

Do Maryland courts have subject matter jurisdiction over private suits for unsolicited faxes under the TCPA [Telephone Consumer Protection Act]?

## DISCUSSION

The issue presented by this case is, at its core, an issue of statutory construction. Its resolution requires that we examine not only the TCPA itself, but Maryland's Consumer Protection Act, particularly CL § 14–1313, which prohibits the sending of unsolicited commercial advertisements by facsimile. We therefore begin our analysis with a discussion of the TCPA and CL § 14–1313, as well as other commercial law provisions relevant to the decision in this case.

---

**2.** By order issued pursuant to Maryland Rule 8–602, we remanded the case to the circuit court for entry of a final judgment as required by Maryland Rule 2–601. That order was entered on November 8, 2002, and the appeal is now ready for resolution.

## I.

### The Telephone Communications Protection Act

In 1991, Congress amended the Communications Act of 1934 with enactment of the TCPA, codified at 47 U.S.C. § 201 *et seq.* Its purpose "is to protect residential telephone subscriber privacy rights by restricting certain commercial solicitation and advertising uses of the telephone and related telecommunications equipment." H.R.Rep. No. 102–317, at 5 (1991), *reprinted in* 14082 U.S. Congressional Serial Set, 102d Cong. 1st Sess.1991; *see also Int'l Science & Tech. Inst., Inc. v. Inacom Comm., Inc.,* 106 F.3d 1146, 1150 (4th Cir.1997).

At the time of the TCPA's enactment, over half the states had enacted statutes restricting marketing uses of the telephone. *See* 47 U.S.C. § 227, Congressional finding No. 7. Congress recognized, however, that "telemarketers can evade [state] prohibitions through interstate operation; therefore, Federal law is needed to control residential telemarketing practices." *Id.; see also* S.Rep. No. 102–178, at 5 (1991), *reprinted in* 1991 U.S.C.C.A.N.1968, 1972–73 (noting that "Federal legislation is necessary to protect the public from automated telephone calls [and that] Federal action is necessary because States do not have the jurisdiction to protect their citizens against those who use these machines to place interstate telephone calls").

The Act was enacted for the benefit of the states, not the federal government. As the Court of Appeals for the Third Circuit commented, the Act "does not appear to reflect any significant federal interest, or one that is uniquely federal. It does not reflect an attempt by Congress to occupy this field of interstate communication or to promote national uniformity of regulation." *Erienet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 515 (3d Cir.1998).

The TCPA proscribes, in general, both unsolicited telephone calls made for a commercial purpose and the transmission of unsolicited facsimiles for the same purpose. With respect to faxes in particular, the House Report recognized that "the proliferation of facsimile machines has been accompanied by

explosive growth in unsolicited facsimile advertising, or 'junk fax.' " H.R.Rep. No. 102–317, at 10 (1991), *reprinted in* 14082 U.S. Congressional Serial Set, 102d Cong. 1st Sess.1991. The House Report identified two problems with this sort of tele-marketing: "First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." *Id.*

To remedy this situation, Congress included the following prohibition in the TCPA:

**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

It shall be unlawful for any person within the United States—

\* \* \*

**(C)** to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]

47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

The TCPA authorizes state attorneys general to bring civil actions on behalf of the residents of their respective states for an injunction or money damages or both. 47 U.S.C. § 227(f)(1). In these actions, the Act gives the federal district courts exclusive jurisdiction. 47 U.S.C. § 227(f)(2). The Act also authorizes the Federal Communications Commission to intervene as of right in any state attorney general's action. 47 U.S.C. § 227(f)(3).

In addition, and of particular relevance to the instant case, the Act creates a private cause of action to obtain an injunc-

tion and to recover $500.00 or actual monetary damages, whichever is greater. 47 U.S.C. § 227(b)(3). This subsection reads:

**(b) Restrictions on use of automated telephone equipment**

\* \* \*

**(3) Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

**(A)** an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

**(B)** an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater, or

**(C)** both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

*Id.*

A similar private right of action is created for violations of the unsolicited telephone call provisions. *See* 47 U.S.C. § 227(c)(5) (providing that: "A person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations prescribed under [the TCPA] may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss . . .").[3]

---

**3.** The TCPA also has a savings clause, which reads in relevant part:

The provisions authorizing a private right of action for unsolicited faxes and telephone calls apparently were relatively late additions to the Act. *Int'l Science,* 106 F.3d at 1152. Senator Ernest (Fritz) Hollings, the bill's sponsor in the Senate, discussed the rationale for allowing consumers to bring suit in state court:

> "The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. . . .
>
> Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill."

---

**(e) Effect on State law**
**(1) State law not preempted**
Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits—
**(A)** the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
**(B)** the use of automatic telephone dialing systems;
**(C)** the use of artificial or prerecorded voice messages; or
**(D)** the making of telephone solicitations.
47 U.S.C. § 227(e)(1) (1991).

*Id.* at 1152–53 (quoting 137 Cong. Rec. S16205–06 (daily ed. Nov. 7, 1991)(statement of Sen. Hollings)).

The federal courts of appeal that have examined the private cause of action provisions of the TCPA have uniformly held that they place exclusive jurisdiction for a private right of action in state courts; there is no implicit concurrent jurisdiction in the federal courts. *Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir.2000); *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs.*, Ltd., 156 F.3d 432, 434 (2d Cir.1998); *ErieNet*, 156 F.3d at 518; *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289, *modified*, 140 F.3d 898 (11th Cir. 1998); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 510 (5th Cir.1997); *Int'l Science*, 106 F.3d at 1152, 1158. *See also Compoli v. AVT Corp.*, 116 F.Supp.2d 926, 928 (N.D.Ohio 2000). Writing for the court in *Int'l Science* (the leading case on the subject), Judge Niemeyer was careful to emphasize that, although Congress intended that private actions under the TCPA be brought in state courts, Congress did not mandate and, because of constitutional concerns, could not mandate such suits. 106 F.3d at 1156. Instead, such suits may be filed so long as the states *allow* them to be brought. *Id.*

Judge Niemeyer noted Congress's concern about the burden on court administration of "the millions of potential private TCPA claims." *Id.* at 1157. As Judge Niemeyer pointed out, Congress addressed this concern by eliminating such suits in federal courts and including a provision in the Act permitting the states to decline jurisdiction over such private suits. "[W]e believe Congress acted rationally in both closing federal courts and allowing states to close theirs to the millions of private actions that could be filed if only a small portion of each year's 6.57 billion telemarketing transmissions were illegal under the TCPA." *Id.*

Addressing 47 U.S.C. § 227(b)(3) of the Act in particular, Judge Niemeyer explained:

The clause in 47 U.S.C. § 227(b)(3) "if otherwise permitted by the laws or rules of court of a State" does not condition

the substantive right to be free from unsolicited faxes on state approval. Indeed, that substantive right is enforceable by state attorneys general or the Federal Communications Commission irrespective of the availability of a private action in state court. Rather, the clause recognizes that states may refuse to exercise the jurisdiction authorized by the statute. Thus, a state could decide to prevent its courts from hearing private actions to enforce the TCPA's substantive rights. To that extent, the existence of a private right of action under the TCPA could vary from state to state. That inequality, however, touches only a statutory permission to enforce privately the same substantive rights which both the state and the federal government can enforce in federal court through other mechanisms.

*Id.* at 1156.[4]

Rejecting the argument that Congress impermissibly commandeered state resources by creating exclusive state jurisdiction over private actions in the TCPA, Judge Niemeyer stated:

In this case, Congress has not commanded state legislatures to legislate, as found impermissible in *New York [v. United States,* 505 U.S. 144, 178–79, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992)]. Rather, it has, at most, directed that state courts enforce federal law, a requirement imposed on the states directly by the Supremacy Clause of Article VI, which provides that "the Laws of the United States which shall be made in Pursuance [of the Constitution] . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

---

4.  Judge Niemeyer's comment quoted above was made in the context of addressing the argument that exclusive state jurisdiction under the TCPA creates due process and equal protection concerns. The constitutional argument, rejected by the court, was that if some states decline to enact statutes that duplicate the TCPA's substantive prohibitions, then the citizens of those states would be prevented from enjoying the protections of the TCPA while citizens of other states would be able to avail themselves of the protections in the federal law. *Int'l Science & Tech. Inst., Inc. v. Inacom Comm., Inc.,* 106 F.3d 1146, 1156–57 (4th Cir.1997).

U.S. Const. art. VI. Indeed, since *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), it has been clear that state courts may not refuse to enforce federal claims which are similar to state claims enforced in the same courts, at least where the federal enactment provides for *concurrent* jurisdiction in state and federal courts.

It is true that in the case before us, we do not have the ameliorating fact that the TCPA provides for concurrent federal jurisdiction over private civil actions. To the contrary, in the TCPA Congress took the unusual step of making state court jurisdiction exclusive. Apparently recognizing that the exclusivity of state court jurisdiction could create a problem potentially left unresolved by *Testa,* Congress avoided any constitutional issue by refusing to coerce states to hear private TCPA actions, providing instead that a person or entity may, "if otherwise permitted by the laws or rules of court of a State," bring a TCPA action in an appropriate court of that state. *States thus retain the ultimate decision of whether private TCPA actions will be cognizable in their courts.*

*Id.* at 1157 (citations omitted) (emphasis supplied).

Whether Maryland has decided to permit private suits under the TCPA is, as we have said, at the heart of this case. The answer to this question is informed by various legislative enactments of the Maryland General Assembly. It is to those enactments that we turn next.

## II.

### Maryland's Unsolicited Fax Statute, CL § 14–1313, and Related Provisions of Maryland's Consumer Protection Laws.

In 1989, two years before Congress's enactment of the TCPA, the Maryland General Assembly enacted CL § 14–1313. This statute, entitled "Unsolicited facsimile transmissions," is not unlike the comparable fax provision of the TCPA in that it prohibits the transmission of unsolicited faxes for

commercial solicitation purposes. Subsection (b) of CL § 14–1313 provides:

> *Commercial solicitation prohibited.*—A person may not make intentionally an electronic or telephonic transmission to a facsimile device for the purpose of commercial solicitation.

Subsection (c) of the statute authorizes the Attorney General to "initiate a civil action against any person who violates this section to recover for the State a penalty not to exceed $1,000 for each violation." Md.Code (1975, 2000 Repl.Vol.), § 14–1313(c) of the Commercial Law Article. Notably, neither this statute, nor any other statute in Title 13 or 14 of the Consumer Law Article, provides for a private cause of action for violations of CL § 14–1313.

In this respect, CL § 14–1313 stands in stark contrast to numerous other Maryland consumer protection laws, for which private causes of action have been created. CL § 13–408 creates a private cause of action, in addition to any action by the Consumer Protection Division of the Office of the Attorney General or the Attorney General, for violations of Maryland's Consumer Protection Act, codified in CL § 13–101 *et seq.* *See* Md.Code (1975, 2000 Repl.Vol.), § 13–408(a) of the Commercial Law Article. Private causes of action are provided for violations of other miscellaneous consumer protection statutes, as well. *See* Md.Code (1975, 2000 Repl.Vol.), § 14–304 of the Commercial Law Article ("Door–to–Door Sales"); Md.Code (1975, 2000 Repl.Vol., 2002 Cum.Supp.), § 14–407 of the Commercial Law Article ("Consumer Products Guaranty Act"); Md.Code (1975, 2000 Repl.Vol.), § 14–505 of the Commercial Law Article ("Fine Prints"); Md.Code (1975, 2000 Repl.Vol.), § 14–1005 of the Commercial Law Article ("Automotive Repair Facilities"); Md.Code (1975, 2000 Repl.Vol.), § 14–1109 of the Commercial Law Article ("Layaway Sales"); Md.Code (1975, 2000 Repl.Vol.), §§ 14–1213 and 14–1214 of the Commercial Law Article ("Consumer Credit Reporting Agencies"). Violations of the Maryland Telephone Solicitations Act, CL

Title 14, Subtitle 22, likewise may be enforced by private cause of action.[5]

■ As we shall explain more fully in Part III, *infra*, it is not without significance to us, as we resolve the issue presented by this case, that the legislature has expressly created a private cause of action for violations of the telephone solicitations provisions and for a number of other consumer protection laws of our State. The legislature, however, has not expressly created a private action for violation of Maryland's unsolicited facsimile law, CL § 14–1313. Instead, the General Assembly has expressly limited to the Attorney General the authority to bring actions for violations of the Maryland unsolicited facsimile law. As we have said, CL § 14–1313(c) provides that the Attorney General "may initiate a civil action against any person who violates" the statute. It is a basic principle of statutory construction that the courts should not read into a statute language that is not there. *Medex v. McCabe*, 372 Md. 28, 38–39, 811 A.2d 297 (2002),; *Wyndham v. Haines*, 305 Md. 269, 276, 503 A.2d 719 (1986). "It is also an 'elemental cannon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Karahalios v. Nat'l Fed'n of Fed. Employees*, Local 1263, 489 U.S. 527, 533, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989) (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)). Moreover, as we have seen, when the General Assembly has wanted to create a private action for violations of other consumer protection laws, it has known precisely how to do it. *See, e.g., Greentree v. Fertitta*, 338 Md. 621, 638–39, 659 A.2d 1325 (1995); *Turkey Point Prop. Owners' Ass'n, Inc. v. Anderson*, 106 Md.App. 710, 717, 666 A.2d

---

**5.** The private cause of action for violations of the Maryland Telephone Solicitations Act can be found by referencing the following provisions of the Commercial Law Article: Md.Code (1975, 2000 Repl.Vol., 2002 Cum.Supp.), § 13–301(14)(xiv) of the Consumer Law Article; Md.Code (1975, 2000 Repl.Vol., 2002 Cum.Supp.), § 13–301(10) of the Consumer Law Article; and Md.Code (1975, 2000 Repl.Vol.), § 13–408 of the Consumer Law Article.

904 (1995). Quite plainly, there is no private cause of action for violations of CL § 14–1313.

In the thirteen years since enactment of CL § 14–1313, there have been four occasions on which the General Assembly has been presented with bills either to amend CL § 14–1313, or to take other action that reasonably would have prompted reconsideration of CL § 14–1313's omission of a private cause of action.[6]  Moreover, since the enactment of the TCPA more than a decade ago, the General Assembly, presumed to be aware of that law, *see Cicoria v. State,* 332 Md. 21, 43–44, 629 A.2d 742 (1993), has never voiced its acceptance or rejection of jurisdiction over private actions under the Act.

Against this backdrop, we now turn to this case.

---

6.  In January 1996, Senate Bill ("SB") 29 was introduced.  The bill, which did not pass, sought to amend CL § 14–1313 by requiring the sender of unsolicited faxes to include a toll-free telephone number and mailing address by which the recipient of the fax could have contacted the sender and requested that further solicitations cease.  In neither its original form, nor in any efforts to amend it, did SB 29 contemplate creation of a private cause of action under CL § 14–1313.

In February 1998, House Bill ("HB") 1114 was proposed.  This bill sought to repeal and reenact CL § 14–1313 with amendments that would have included the prohibition of sending unsolicited electronic mail ("e-mail") transmissions for the purpose of commercial solicitation.  This bill likewise did not pass.  Of interest to us, however, is that the legislative history of this failed bill contains no hint of an effort to create a private cause of action.

The following year, HB 573 was introduced.  Of relevance here, HB 573 sought, in part, to prohibit "certain electronic, telephonic, or wireless transmissions to an electronic mail device for the purpose of a commercial solicitation."  HB 573 also provided that "[a] person damaged by a violation ... may bring an action against the person who initiated" the communication.  HB 573 likewise was not enacted.  It is interesting, for our present purposes, that this bill squarely addressed private causes of action in relation to telecommunications violations, and the General Assembly took no favorable action.

Finally, HB 339 was introduced in 2000.  It sought "to create, maintain, and update a database of residential telephone subscribers" who no longer wished to receive telephone solicitations, and would have created a private cause of action for violations of its provisions.  The primary target of this bill was unsolicited telephone calls, not faxes.  Yet, its sponsors did not attempt to amend CL § 14–1313 in conjunction with the introduction of HB 339.  HB 339 received an unfavorable report by the House Environmental Matters Committee.

## III.

### The Parties' Contentions

The parties agree, as they must, that the TCPA creates a private cause of action for unsolicited faxes and vests subject matter jurisdiction in the state courts. The parties also agree that state courts generally have jurisdiction to enforce federal statutes. And, they agree that resolution of this case focuses on the language of 47 U.S.C. § 227(b)(3), providing that a private cause of action will lie in state court, "if otherwise permitted by the laws or rules of court of a State." From there, however, the parties' positions diverge.

Appellant argues that the language of § 227(b)(3), quoted above, explicitly creates private causes of action in state courts, and that such actions do lie in Maryland state courts since the General Assembly has not expressly prohibited, or "opted out" of, such private actions. As further support for its argument, appellant points to decisions of other state courts, the majority of which rely on *Int'l Science* and have used an "opt out" rationale to conclude that a private cause of action under the TCPA can be brought in state court *unless* the state legislature has refused to permit such private actions. *See Hooters of Augusta, Inc. v. Nicholson,* 245 Ga.App. 363, 364–65, 537 S.E.2d 468, 470 (Ga.App.2000), *cert. denied,* 2001 Ga. LEXIS 76 (Ga. Jan. 19, 2001); *Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 910–11 (Mo.2002) (en banc); *Zelma v. Mkt. U.S.A.,* 343 N.J.Super. 356, 366–67, 778 A.2d 591, 598 (N.J.Super.Ct.App.Div.2001); *Schulman v. Chase Manhattan Bank,* 268 A.D.2d 174, 177, 710 N.Y.S.2d 368, 371 (N.Y.App.Div.2000); *Kaplan v. Democrat and Chronicle,* 266 A.D.2d 848, 848–49, 698 N.Y.S.2d 799, 800 (N.Y.App.Div. 1999).[7] Appellant also argues that the precise issue presented

---

**7.** Many of these courts read *Int'l Science* as having provided this "opt out" construction of the "unless otherwise permitted" language of 47 U.S.C. § 227(b)(3). As we read *Int'l Science,* however, the Fourth Circuit's decision is not nearly so emphatic on this point as these state court opinions suggest that it is. The court was not called upon to decide, and did not decide, whether "unless otherwise permitted"

by this case was all but decided by this Court last year in *Worsham v. Nationwide Ins. Co.*, 138 Md.App. 487, 772 A.2d 868, *cert. denied*, 365 Md. 268, 778 A.2d 383 (2001).

Not surprisingly, appellees disagree with appellant's reading of *Worsham*, arguing not only that the language of that case upon which appellant relies is dicta, but also that the case is readily distinguishable on its facts. Appellees further argue that the phrase "if otherwise permitted" requires an affirmative act by the Maryland General Assembly expressly creating, or "opting in" to a private right of action. Appellees rely in support upon *Autoflex Leasing, Inc. v. Mfrs. Auto Leasing, Inc.*, 16 S.W.3d 815, 817 (Tex.App.2000), in which the court held that the legislature must "opt in," by enacting specific enabling legislation, to Congress's grant of jurisdiction over private actions to enforce the TCPA. Appellees finally argue that, in any event, the Maryland legislature has already spoken on the subject by expressly limiting to the Attorney General those persons who may bring an action for violation of Maryland's counterpart to the unsolicited fax prohibition in the TCPA, CL § 14–1313. Consequently, appellees posit, to the extent that an "opt out" analysis is employed to resolve the issue, Maryland has already opted out of the grant of state court jurisdiction over the fax provisions of the TCPA.

We conclude that appellees have the better part of the argument, for the reasons that follow.

---

means that states must "opt out" or "opt in" to Congress's grant of the private right of action. We also note that the court never once employed the "opt-in/opt-out" phraseology. Furthermore, of the state courts that have read *Int'l Science* as declaring that states must expressly "opt out" of the grant of jurisdiction, most of these courts seem to have seized upon the court's statement that "states may refuse to exercise the jurisdiction authorized by the statute." 106 F.3d at 1156. Notably, however, in several instances in its opinion the court refers to the Act as allowing the states to consent to jurisdiction over private suits. *See id.* at 1150 (state court jurisdiction over private suits is "subject to their consent"), 1152 (private actions may be brought in state court "so long as the states allow such actions"), 1154 (such actions may be brought "if the state consents"). These statements suggest that the Fourth Circuit, if called upon to do so, might very well interpret 47 U.S.C. § 227(b)(3) as an "opt in" provision.

## IV.

### The *Worsham* Case

We do not accept appellant's assertion that *Worsham* answers, or at least suggests the answer to, the question presented by this case. In *Worsham*, we were asked to determine whether the defendant/appellee could be held liable in Maryland state courts for a TCPA claim arising from two unsolicited telephone calls from persons who identified themselves as calling "for Nationwide." 138 Md.App. at 489–90, 772 A.2d 868. Worsham, plaintiff below, had relied in his complaint on the telephone solicitation provisions of 47 U.S.C. § 227(c)(5) of the TCPA, not the unsolicited fax provisions of 47 U.S.C. § 227(b)(3). *Id.* at 490–91, 772 A.2d 868.

*Worsham* came to us from the circuit court's grant of summary judgment in favor of defendant/appellee. *Id.* at 492–93, 772 A.2d 868. We held, for reasons not relevant here, that the circuit court properly granted summary judgment in favor of the defendant on some of the counts in the complaint, but not others. *Id.* at 501, 772 A.2d 868. Regarding the latter counts, we held that summary judgment was prematurely granted and remanded for further proceedings in the circuit court. *Id.* at 504–05, 772 A.2d 868.

As we mentioned in Part I, *supra*, the TCPA's prohibition against telephone solicitations, which was at issue in *Worsham*, contains the same grant of state court jurisdiction over private actions for violation of the law as does the Act's unsolicited facsimile provision. This prompted us, before proceeding to the merits of the issue presented by the parties in *Worsham*, to state the following:

"In the absence of a[s]tate statute declining to exercise the jurisdiction authorized by the [TCPA], a[s]tate court has jurisdiction over TCPA claims." *Kaplan v. Democrat & Chronicle*, 266 A.D.2d 848, 698 N.Y.S.2d 799, 800 (N.Y.App. Div.1999); *see Int'l Science & Tech. Inst. v. Inacom Communications*, 106 F.3d 1146, 1158 (4th Cir.1997). Thus far, Maryland has not refused to exercise such jurisdiction. Accordingly, our state courts are faced with the extraordi-

nary situation of having exclusive jurisdiction over a private right of action brought under federal law. *See, e.g., Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir.2000) (joining Second, Third, Fourth, Fifth, and Eleventh Circuits in " 'the somewhat unusual conclusion that state courts have exclusive jurisdiction over a cause of action created by a federal statute, the Telephone Consumer Protection Act of 1991' ") (citations omitted).

*Id.* at 496–97, 772 A.2d 868.

We do not read this language quite as appellant would have us do, for several reasons. First, the parties in *Worsham* did not brief the issue presented by the case *sub judice*. The two issues before this Court were, essentially: (1) whether the TCPA provides a remedy for the first unsolicited telephone call or only after the second such call; and (2) whether the defendant was responsible for the actions of the party who placed the call. Because we were not asked in *Worsham* to determine the jurisdictional question presented by this case, it would be dangerous to read too much into our brief discussion of it. *See State v. Wilson*, 106 Md.App. 24, 37–39, 664 A.2d 1 (cautioning against the impropriety of over-reading an opinion's dicta), *cert. denied*, 340 Md. 502, 667 A.2d 342 (1995), *rev'd on other grounds, Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

Second, and more importantly, *Worsham* dealt, as we have said, with the unsolicited telephone call provision of the TCPA, not the unsolicited fax portion of the statute. The significance of this is not lost on us. We recognized in Part II, *supra*, that the General Assembly has taken very different approaches to the grant of a private cause of action in the Maryland counterparts to the telephone and facsimile prohibitions in the TCPA.[8] The legislature created the private action in the case of the

---

8. We do not use the term "counterpart" to suggest a substantial identity between the federal and state commercial telephone prohibitions. Indeed, unlike the state and federal unsolicited facsimile prohibitions, which are quite similar, Maryland's prohibition surrounding commercial telephone solicitation does not address precisely the same concerns as does the federal provision.

former, but, in the case of the latter, eschewed such actions in favor of limiting enforcement authority to the Attorney General alone. Appellant attempts to minimize this distinction, arguing that

> [t]here is no public policy that would justify different treatment of faxes versus live or prerecorded telemarketing calls, for purposes of subject matter jurisdiction, given that the causes of action for each are "substantially identical." Any attempt to segregate TCPA suits along these lines would only create unnecessary confusion and run against the public policy behind the TCPA.

We are not convinced that confusion would arise, even assuming that Maryland has accepted jurisdiction over telephone solicitations under the TCPA. Nor are we convinced that "segregation of jurisdiction" would violate the public policy underlying the TCPA. In this regard we harken back to Judge Niemeyer's statement that, as framed by Congress, the Act leaves it to the individual states to decide the jurisdictional question. *Int'l Science,* 106 F.3d at 1158. Finally, it is evident that our legislature has chosen to treat telephone and facsimile solicitations differently, providing for a private cause of action for the one, but not the other, in our Commercial Law Article.

## V.

### The General Assembly's Intent Concerning the TCPA

It is unnecessary for us to decide in this case whether the General Assembly must expressly "opt in" to the jurisdiction granted the states in 47 U.S.C. § 227(b)(3) of the TCPA by enactment of specific enabling legislation, as appellees urge us to do by asking that we adopt the analysis of the Texas Court of Appeals in *Autoflex.*[9] This is because the General Assem-

---

9. The Texas Court of Appeals is the only state court to date that has construed the "if otherwise permitted" language of the TCPA to require a state legislature to pass enabling legislation before a private suit may be brought in state court under the TCPA. Interestingly, after the filing

bly, by virtue of what it both has and has not done in this area of the law, has demonstrated its intent to "opt out" of the grant of jurisdiction. We explain.

At the risk of belaboring the point, the General Assembly for whatever reason has chosen not to create a private cause of action for violations of Maryland's unsolicited facsimile statute, while creating such private actions for other consumer protection violations. Stated differently, with regard to unsolicited facsimiles, the legislature has deemed it appropriate to limit to the Attorney General the authority to enforce the state law counterpart to the federal facsimile prohibition. Moreover, and as we have pointed out, the legislature in the years since passage of the TCPA has taken no steps, even when presented with several opportunities to do so, to amend the law to create a private cause of action for violations of the Maryland law.

We conclude that this exercise of legislative intent reflects the legislature's further intent *not* to accept the grant of jurisdiction over private actions under 47 U.S.C. § 227(b)(3). To hold the opposite, as appellant would have us do, runs contrary to any commonsense interpretation of the General Assembly's action on the subject. *Medex*, 372 Md. at 37–39, 811 A.2d 297. Furthermore, it would attribute to the General Assembly the internally inconsistent intent to prohibit a private action in state court for violation of the state law, but permit a private action in state court for violation of the comparable federal law. In the absence of express indication by the General Assembly that it intends such an anomaly, we will not infer that the legislature has created one.

In sum, Maryland has a statute, CL § 14–1313, that covers substantially the subject matter covered by the claim raised in

---

of suit in *Autoflex*, but before the Court of Appeals filed its opinion in that case, the Texas legislature amended its business and commerce code "to authorize a private right of action in state court under the TCPA for the transmission of unsolicited facsimile advertisements." *Autoflex Leasing, Inc. v. Mfrs. Auto Leasing, Inc.*, 16 S.W.3d 815, 817–18 (Tex.App.2000).

this lawsuit under the TCPA. Appellant could not proceed under the Maryland statute, because it does not permit a private right of action. By opting not to create a private right of action for violation of Maryland law, the legislature has indicated its intent not to permit a private right of action for violation of the comparable federal law. Thus, the circuit court properly granted appellees' motion to dismiss on the ground that the claim did not make out a cause of action in Maryland. *Davidson v. Microsoft Corp.*, 143 Md.App. 43, 47, 792 A.2d 336, *cert. denied*, 369 Md. 571, 801 A.2d 1032 (2002); *Samuels v. Tschechtelin*, 135 Md.App. 483, 515, 763 A.2d 209 (2000).[10]

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**10.** Appellees separately argue that the TCPA does not permit private class action suits, as was brought in the instant case. In light of our decision, we need not reach this question.