John Lary, a physician and the sole proprietor of Internal Medicine Clinic, appeals from a judgment of the Madison Circuit Court dismissing, pursuant to Rule 12(b)(6), Ala.R.Civ.P., Lary's action against Flasch Business Consulting, Helmut Flasch, and Doctor Relations, Inc., arising out of the defendants' sending of unsolicited facsimile ("fax") messages to Lary via telephone lines. We affirm in part, reverse in part, and remand. *Page 1160 
 "On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala. 1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772
(Ala.Civ.App. 1989). The appropriate standard of review under Rule 12(b)(6)[, Ala.R.Civ.P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So.2d 746
(Ala.Civ.App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala. 1986)."
Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993); see also AccessCapital, Inc. v. Uptown, Inc., [Ms. 2020300, May 9, 2003] 863 So.2d 1127,1128 (Ala.Civ.App. 2003).
According to the complaint as amended, Lary provides medical services, including emergency medical services, under the name Internal Medicine Clinic. Lary has secured the use of a telephone line that is connected to both a telephone and a fax machine and that Lary uses to make and receive, among other things, emergency telephone calls and fax transmissions related to the rendition of emergency medical services. Lary alleged that the defendants, without permission from Lary, transmitted or caused the transmission of unsolicited advertisements via telephone wires to Lary's fax machine despite the absence of an established business relationship between Lary and the defendants. In addition to alleging claims under Alabama law of conversion and invasion of privacy, the complaint averred that the defendants' conduct had violated four subsections of 47 U.S.C. § 227, a portion of the Telephone Consumer Protection Act of 1991 ("the TCPA") as codified. Photocopies of several documents purporting to be unsolicited advertisements sent to Lary's fax machine by the defendants were attached as exhibits to Lary's amended complaint.
Rather than filing an answer, the defendants filed a motion, pursuant to Rule 12(b)(6), Ala.R.Civ.P., to dismiss Lary's complaint. In that motion, the defendants contended that Lary did not have a private right of action under the TCPA and that the complaint did not state invasion-of-privacy or conversion claims cognizable under Alabama law. After a hearing, the trial court entered a judgment granting the defendants' motion to dismiss. Lary appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
In his initial appellate brief, Lary argued that the trial court erred in granting the motion to dismiss as to each of his claims. However, following the submission of that brief and the appellees' brief, he filed what he termed a "Notice of Voluntary Dismissal of Common Law Claims" in which he indicated that he now seeks review only of the trial court's judgment as to his claims arising under the TCPA; his reply brief confirms that this action leaves only the propriety of the trial court's judgment as to those claims for this court's review. Although it is doubtful that *Page 1161 
Lary's "notice of dismissal" can properly be construed as a notice of dismissal under Rule 41(a), Ala.R.Civ.P., because of the intervening judgment on the merits (and his appeal therefrom), it is well settled that where an appellant expressly waives error in this court, we will disregard that error as a basis of reversal. See, e.g., Baggett v. Webb,46 Ala. App. 666, 670, 248 So.2d 275, 670 (Civ.App. 1971), and Rowan v.Rowan, 45 Ala. App. 505, 506, 232 So.2d 685, 686 (Civ.App. 1970) (declining to consider "assignments of error" that had been "expressly waived"). We therefore affirm the judgment of the trial court as to Lary's state-law invasion-of-privacy and conversion claims and review the trial court's judgment only as to his claims arising under the TCPA.
Congress enacted the TCPA in 1991, noting, among other things, that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety"; Congress also stated that a federal law governing telemarketing practices was necessary because telemarketers could, at that time, evade the prohibitions of state laws restricting telemarketing "through interstate operations." Pub.L. No. 102-243, § 2, 105 Stat. 2394 (1991). The TCPA, in addition to imposing other standards regarding certain uses of telephone equipment, provides, in pertinent part, that it is unlawful for any person in the United States to make any telephone call using an automated telephone dialing system, other than a call made for emergency purposes or made with the prior express consent of the party being called, "to any emergency telephone line," which includes "any emergency line of a . . . medical physician or service office" or a "health care facility." 47 U.S.C. § 227(b)(1)(A)(i). The TCPA also specifically forbids the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." Id. at § 227(b)(1)(C). Subsection (b) of 47 U.S.C. § 227, in which those prohibitions appear, also states, among other things, that "[a] person or entity may, if otherwisepermitted by the laws or rules of court of a State, bring . . . an action to recover for actual monetary loss from" a violation of that subsection "or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3) (emphasis added).[1]
The correct interpretation of the phrase "if otherwise permitted by the laws or rules of court of a State" is crucial to the proper disposition of Lary's appeal of the judgment insofar as it dismissed the claims in his complaint alleging violations of 47 U.S.C. § 227(b)(1)(A)(i) and § 227(b)(1)(C). There is a split of authority among the various states concerning whether Congress envisioned that the "permission" of a state necessary for a private party to bring an action under47 U.S.C. § 227(b)(3) would be tacit permission or express permission. Put another way, we must determine whether, under the TCPA, a state must expressly "opt out" of the state-court enforcement mechanism in order for the courts of that state not to have jurisdiction of claims seeking to enforce 47 U.S.C. § 227(b), or whether a state must expressly "opt in" to the state-court enforcement mechanism in order for the courts of that state to exercise jurisdiction of such claims?[2] *Page 1162 
To date, published decisions from Georgia, Missouri, New Jersey, New York, and Pennsylvania have all concluded that 47 U.S.C. § 227(b)(3) confers jurisdiction upon state trial courts to entertain actions alleging violations of 47 U.S.C. § 227(b) despite the lack of laws or court rules expressly showing an intent to "opt in." Hooters of Augusta,Inc. v. Nicholson, 245 Ga. App. 363, 537 S.E.2d 468 (2000); Reynolds v.Diamond Foods Poultry, Inc., 79 S.W.3d 907, 910 (Mo. 2002) ("the TCPA does not condition the right to bring a private cause of action under it on a state's adoption of specific legislation permitting such suits[; s]uit may be brought unless a state does not otherwise permit such a suit"); Zelma v. Market U.S.A., 343 N.J. Super. 356, 778 A.2d 591
(App.Div. 2001); Schulman v. Chase Manhattan Bank, 268 A.D.2d 174,710 N.Y.S.2d 368 (2000); Aronson v. Fax.com, Inc., 51 Pa. D. C. 4th 421 (Com. Pleas 2001); cf. Kaufman v. ACS Sys.,Inc., 110 Cal.App.4th 886, 2 Cal.Rptr.3d 296 (2003) (finding that trial court had jurisdiction to consider claim under 47 U.S.C. § 227(b)(3) because state legislature had never enacted law barring such claims); Inre Rules and Regs. Implementing the Tel. Consumer Protection Act of1991, 7 F.C.C.R. 8752, ¶ 55 (1992) (Federal Communication Commission Report and Order noting existence of private right of action under47 U.S.C. § 227(b)(3) "[a]bsent state law to the contrary").
In contrast to those authorities, only one reported decision has unequivocally espoused the "opt in" theory. Autoflex Leasing, Inc. v.Manufacturers Auto Leasing, Inc., 16 S.W.3d 815, 817 (Tex.App. 2000) ("we hold that Congress intended the states to pass legislation or promulgate court rules consenting to state court actions based on the TCPA, before such suits under the TCPA may be brought in state courts").[3]
Maryland's Court of Special Appeals, although declining to adopt the reasoning of Autoflex, has concluded that no private right of action existed in that state under 47 U.S.C. § 227(b)(3) because the Maryland legislature had adopted legislation barring unsolicited faxes but had limited standing to sue under that legislation to that state's attorney general. R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.,149 Md. App. 219, 815 A.2d 816 (2003).[4]
The most recent appellate opinion we have located that has considered the "opt in"/"opt out" issue is from our neighboring state of Florida. InCondon v. Office Depot, Inc., [No. 2D02-1688, Aug. 22, 2003]855 So.2d 644 (Fla.Dist.Ct.App. *Page 1163 
2003), a Florida appellate court considered whether a plaintiff who allegedly had received 13 unsolicited faxes from a defendant could maintain an action in a Florida trial court under 47 U.S.C. § 227(b)(3). The Condon court answered that question in the affirmative, reversing a judgment in favor of the defendant dismissing the plaintiff's action for failure to state a claim; it reasoned:
 "We join the majority view and conclude that the State is not required to adopt enabling legislation before a state court of competent jurisdiction can entertain this federal law claim. Rather, we interpret the language `if otherwise permitted' to acknowledge the principle that states have the right to structure their own court systems and that state courts are not obligated to change their procedural rules or to create courts to accommodate TCPA claims. `The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the state create a court competent to hear the case in which the federal claim is presented.' Howlett ex rel. Howlett v. Rose, 496 U.S. 356, 372 (1990). The `federal law takes the state courts as it finds them.' Howlett, 496 U.S. at 372 (citing Henry Hart, The Relations Between State and Federal Law, 54 Colum. L. Rev. 489, 504 (1954)). `The States thus have great latitude to establish the structure and jurisdiction of their own courts.' Howlett, 496 U.S. at 372. It is these principles of federal law that we conclude are the subject of the `if otherwise permitted' language.
 "We align ourselves with the majority view because we are of the opinion that the minority view requiring opt-in legislation runs afoul of the Supremacy Clause of the United States Constitution. There is a presumption of state court jurisdiction over claims arising under federal law. Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820 (1990). And, while exclusive jurisdiction in state court for a federal claim is unusual, it does not negate controlling principles of constitutional law.
 "'Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum — although both might well be true — but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure.'
 "Howlett, 496 U.S. at 367; see also Testa v. Katt, 330 U.S. 386 (1947) (holding that Rhode Island state courts could not refuse to enforce a federal statute when the courts had jurisdiction that was adequate and appropriate to adjudicate the type of claim covered by the federal statute)."
Condon, 855 So.2d at 647 (footnote omitted).
Alabama law is in accord with the proposition that claims under47 U.S.C. § 227(b)(3) are permissible in courts of this state. In 1893, our Supreme Court wrote:
 "It may be stated as a general rule that whenever a legal right arises, and the State Court is competent to administer *Page 1164 
justice the right may be asserted in the State Court, although the Federal Court may have jurisdiction of the same question, subject, however, to the proviso that there is no law limiting jurisdiction to the Federal Courts."
Raisler v. Oliver Co., 97 Ala. 710, 714, 12 So. 238, 240 (1893). Citing Raisler, the Alabama Supreme Court later held that an Alabama circuit court was "a court of competent jurisdiction to hear and determine" a claim brought under the Fair Labor Standards Act,29 U.S.C. § 201 et seq., noting that "[t]he laws of the United States are as much a part of the law of Alabama as its own local laws." Forsyth v.Central Foundry Co., 240 Ala. 277, 282, 198 So. 706, 710 (1940). More recently, the Alabama Supreme Court held that "courts of this state must
accept jurisdiction over claims brought under 42 U.S.C. § 1983," which affords a cause of action when one is deprived under color of state law of rights secured by federal law, "if a § 1983 plaintiff selects a state court as his forum." Terrell v. City of Bessemer, 406 So.2d 337, 340
(Ala. 1981) (emphasis added).
The trial court, in granting the defendants' motion to dismiss, opined that "Congress cannot burden state courts with hearing cases arising out of federal law when there is no concurrent federal jurisdiction." The holdings of our Supreme Court are to the contrary: Congress may elect to limit jurisdiction over a claim arising under federal law to federal courts, but when it does not choose to do so, Alabama courts have the power and duty to adjudicate claims arising under federal law as well as state law. Unlike federal courts, "our circuit courts are courts of general jurisdiction," Thomas v. Liberty Nat'l Life Ins. Co.,368 So.2d 254, 256 (Ala. 1979), and "shall exercise general jurisdictionin all cases except as may otherwise be provided by law." Ala. Const. of 1901, amend. 328, § 6.04(b) (emphasis added).
In light of the foregoing authority, we conclude, as have the majority of other state courts considering the question, that a state's legislative or judicial authorities need not expressly "opt in" in order for the courts of a state to have jurisdiction to hear private civil actions under 47 U.S.C. § 227(b)(3). Moreover, we conclude that the Alabama Legislature has not "opted out," thereby preventing Alabama courts from entertaining such actions. While the Legislature has enacted the "Alabama Telemarketing Act," which generally regulates licensure and conduct of entities in the "telemarketing industry" (Ala. Code 1975, §8-19A-1 et seq.), as well as legislation that creates a state database of persons objecting to telephone solicitations (Ala. Code 1975, § 8-19C-1 et seq.), neither act purports to "occupy the field" of regulating solicitations by telephone. See § 8-19A-23, Ala. Code 1975 (stating that "[n]o provision in this chapter shall be construed to limit any right or remedy provided under law"); § 8-19C-11, Ala. Code 1975 (providing that the remedies, duties, prohibitions, and penalties of §§ 8-19C-2 through8-19C-10 "shall not be exclusive and shall be in addition to all other causes of action, remedies, and penalties provided by law").
As we have noted, Lary's amended complaint alleged that the defendants used or caused the use of automated telephone equipment to make unsolicited and nonemergency telephone calls to an "emergency" telephone line of a physician on numerous occasions and that the defendants used a fax machine, computer, or other device to send unsolicited advertisements to his fax machine. Those allegations, if proved, would demonstrate actionable violations of 47 U.S.C. § 227(b)(1)(A)(i) and § 227(b)(1)(C), and *Page 1165 
such violations can be remedied under 47 U.S.C. § 227(b)(3) by a private civil action in the courts of this state. We therefore conclude that the trial court erred in dismissing Lary's claims that the defendants' conduct violated 47 U.S.C. § 227(b)(1)(A)(i) and § 227(b)(1)(C).
However, we reach a different conclusion as to Lary's claims that the defendants' conduct violated 47 U.S.C. § 227(d)(1). That subsection bars persons in the United States from initiating communications using a fax machine or making telephone calls using automatic telephone dialing systems where those devices do not comply with "technical or procedural standards" prescribed by the Federal Communications Commission; it also bars the use of electronic devices to send faxes unless those faxes are clearly marked with the sending date and time and clearly identify the sender's name and telephone number. However, in contrast to violations of subsection (b) of 47 U.S.C. § 227, which are subject to private rights of action under 47 U.S.C. § 227(b)(3), Congress did not authorize private citizens to bring actions to impose penalties for or recover damages allegedly flowing from violations of subsection (d) of that statute. As the United States Supreme Court recently held in Alexander v. Sandoval,532 U.S. 275 (2001), "private rights of action to enforce federal law must be created by Congress," and in the absence of statutory intent to create a private right and a private remedy under a federal law, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." 532 U.S. at 286-87. Because Congress indicated an intent to make violations of subsection (b) of 47 U.S.C. § 227 actionable by private citizens, but did not indicate a similar intent with respect to violations of subsection (d), we conclude that the trial court properly dismissed Lary's claim asserting violations of 47 U.S.C. § 227(d).
Based on the foregoing facts and authorities, the judgment of the trial court dismissing Lary's claims against the defendants is affirmed except as to his claims asserting violations of 47 U.S.C. § 227(b)(1)(A)(i) and § 227(b)(1)(C). As to those claims, the judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.
[1] If a willful or knowing violation of 47 U.S.C. § 227(b) is found, any monetary award may be trebled by the trial court.47 U.S.C. § 227(b)(3).
[2] In framing the question in this manner, we have not overlooked the proposition that states might not have the power to "opt out" of actions seeking to enforce 47 U.S.C. § 227(b), a view apparently held by the amicus curiae who filed a brief in support of Lary. See Robert R. Biggerstaff, "State Courts and the Telephone Consumer Protection Act of 1991: Must States Opt-in? Can States Opt-out?" 33 Conn. L.R. 407, 424-30 (2001). That proposition is, in our view, unsound. In enacting the TCPA, Congress expressed its intent that the right of a person or an entity to bring an action under 47 U.S.C. § 227(b)(3) be conditioned upon whether the laws or rules of court of a state "permit" the bringing of such an action. Conversely, if a state's laws or rules of court were to expresslyforbid bringing such an action, the private right of action would not be "permitted."
[3] The amicus curiae notes that the Texas Supreme Court "denied" a petition for review in Autoflex, which under Texas court rules indicates that that court was "not satisfied that the opinion of the court of appeals ha[d] correctly declared the law in all respects, but determine[d] that the petition present[ed] no error that require[d] reversal or that [wa]s of such importance to the jurisprudence of the state as to require correction." Rule 56.1(b)(1), Tex.R.App.P.
[4] However, Maryland's highest court has recently granted a petition for a writ of certiorari to review that decision. Ponte v. Investors'Alert, 374 Md. 358, 822 A.2d 1224 (2003) (table).