857 A.2d 1

**R.A. PONTE ARCHITECTS, LTD.**

v.

**INVESTORS' ALERT, INC., et al.**

No. 17, Sept. Term, 2003.

Court of Appeals of Maryland.

Aug. 26, 2004.

690

BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

The issue in this case is whether Maryland courts may entertain a private cause of action for damages, under the provisions of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, for the receipt of unsolicited commercial telephone facsimile messages. We shall hold that such actions may be brought in the courts of this State.

I.

Petitioner, R.A. Ponte Architects, Ltd. ("Ponte"), is a Maryland corporation located in Bethesda, Maryland. According to the allegations of the complaint, Ponte received unsolicited

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

advertisements via facsimile on August 23, 2000, and on several occasions subsequently. These advertisements consisted of an investment newsletter entitled "Investors' Alert," created by Investors' Alert, Inc. and Access Financial Consulting, Inc. The newsletter promoted its own paid subscription, and the purchase of the common stock of certain small corporations, and was distributed free of charge via facsimile broadcast, which permits the transmission of the facsimile to thousands of recipients in a single broadcast session.

Ponte filed a complaint and a motion for class certification in the Circuit Court for Montgomery County against Investors' Alert and Access Financial, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227.[1] The motion for class certification was never ruled upon. Following discovery, Investors' Alert and Access Financial filed a motion to dismiss, which was granted after oral argument, on the basis "that no private cause of action exists within the State of Maryland to allow these claims to proceed." The court reasoned that Maryland Code (1975, 2000 Repl.Vol.), § 14–1313 of the Commercial Law Article, addresses the issue of unsolicited

---

1. The federal statute provides in pertinent part as follows:
 "**47 U.S.C. § 227. Restrictions on use of telephone equipment**
 \* \* \*
 "**(b) Restrictions on use of automated telephone equipment.** (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
 \* \* \*
 (C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine;
 \* \* \*
 "(3) Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that State—
 (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
 (B) an action to recover for actual monetary loss from such a violation or to receive $500 in damages for each such violation, whichever is greater, or
 (C) both such actions."

faxes and makes no provision for private suits.[2]

Ponte noted a timely appeal to the Court of Special Appeals, and the intermediate appellate court affirmed the judgment of the Circuit Court. *See R.A. Ponte Architects, Ltd. v. Investors' Alert,* 149 Md.App. 219, 238–239, 815 A.2d 816, 827 (2003), where the Court of Special Appeals stated:

"In sum, Maryland has a statute, [Maryland Code § 14–1313 of the Commercial Law Article], that covers substantially the subject matter covered by the claim raised in this lawsuit under the TCPA. Appellant could not proceed under the Maryland statute, because it does not permit a private right of action. By opting not to create a private right of action for violation of Maryland law, the legislature has indicated its intent not to permit a private right of action for violation of the comparable federal law."

Ponte then petitioned this Court for a writ of certiorari, which we granted. *Ponte v. Investors' Alert,* 374 Md. 358,

---

**2.** Maryland Code (1975, 2000 Repl.Vol.), § 14–1313 of the Commercial Law Article provides:

" **§ 14–1313. Unsolicited facsimile transmissions.**

"(a) *Definitions*—(1) In this section the following words have the meanings indicated.

(2) 'Facsimile device' means a machine that receives and copies reproductions or facsimiles of documents or photographs that have been transmitted electronically or telephonically over telecommunications lines.

(3)(i) 'Commercial solicitation' means the unsolicited electronic or telephonic transmission in the State to a facsimile device to encourage a person to purchase goods, realty, or services.

(ii) 'Commercial solicitation' does not include:

1. An electronic or telephonic transmission made in the course of prior negotiations; or

2. An electronic or telephonic transmission made in the course of a preexisting Business relationship with the person receiving the transmission.

"(b) *Commercial solicitation prohibited.*—A person may not make intentionally an electronic or telephonic transmission to a facsimile device for the purpose of commercial solicitation.

"(c) *Penalty.*—(1) The Attorney General may initiate a civil action against any person who violates this section to recover for the State a penalty not to exceed $1,000 for each violation.

(2) For the purposes of this section, each prohibited commercial solicitation is a separate violation."

822 A.2d 1224 (2003). The Court also granted motions to participate as *amici curiae* to the State of Maryland and to a private individual on behalf of the petitioner, and to PrimeTV, LLC and DirecTV, Inc., on behalf of the respondents.[3]

## II.

The only question in this case is whether a Maryland trial court is authorized to entertain the federal cause of action created by Congress in the Telephone Consumer Protection Act, 47 U.S.C., § 227. Before addressing this specific question, however, it would be useful to review the law concerning the jurisdiction of Maryland courts over civil causes of action created by the laws of other jurisdictions, and particularly civil causes of action created by federal law.

As a general matter, courts in Maryland regularly entertain civil causes of action arising under the laws of other jurisdictions. *See Ward v. Nationwide Mutual Automobile Ins.*, 328 Md. 240, 247, 614 A.2d 85, 88 (1992); *Rein v. Koons Ford*, 318 Md. 130, 135, 567 A.2d 101, 103 (1989); *Kramer v. Bally's Park Place*, 311 Md. 387, 535 A.2d 466 (1988); *County Exec.*,

---

3. The respondents filed a brief and participated in the argument before the Court of Special Appeals, but they did not file a brief in this Court and did not participate in oral argument.

The *amici* supporting the position of the respondents, in addition to arguing that the federal cause of action should not be entertained, make several arguments against having class actions. For several reasons we do not reach the issue of whether a class action is an appropriate vehicle for suits alleging violations of the Act. First, the trial court did not rule upon the motion for class certification, and neither side raised the issue in the Court of Special Appeals. Therefore, under Maryland Rule 8–131(a), the issue would not ordinarily be decided in appellate proceedings. Second, the issue was neither raised in the certiorari petition, nor in any cross-petition, nor in the order granting certiorari. Consequently, under Rule 8–131(b), it is not before us. Third, it is a settled principle of Maryland appellate procedure that, absent an issue which an appellate court will address *sua sponte* or an issue on which the court requests argument, an *amicus* ordinarily cannot raise an issue which is not raised by the parties. *See Dua v. Comcast Cable*, 370 Md. 604, 642–643, 805 A.2d 1061, 1083–1084 (2002); *Eagle–Picher v. Balbos*, 326 Md. 179, 230–231 n. 15, 604 A.2d 445, 470 n. 15 (1992); *Maryland–National Capital Park & Planning Comm'n v. Crawford*, 307 Md. 1, 15 n. 6, 511 A.2d 1079, 1086 n. 6 (1986).

*Prince George's County v. Doe*, 300 Md. 445, 453–455, 479 A.2d 352, 356–357 (1984); *Pine Street Trading v. Farrell Lines*, 278 Md. 363, 379–380, 364 A.2d 1103, 1114 (1976); *Texaco, Inc. v. Bosche*, 242 Md. 334, 339–340, 219 A.2d 80, 83 (1966); *Lambros v. Brown*, 184 Md. 350, 356–357, 41 A.2d 78, 81 (1945); *B & O Rail Road Co. v. Glenn*, 28 Md. 287, 322 (1868); *LaChance v. Service Trucking Co.*, 215 F.Supp. 162, 165 (D.Md.1963).

Moreover, Maryland courts exercise jurisdiction in such actions even when identical causes of action could not be brought under Maryland law. *See, e.g., Rein v. Koons Ford, supra*, 318 Md. at 133–138, 567 A.2d at 102–104; *Kramer v. Bally's Park Place, supra*, 311 Md. at 392, 535 A.2d at 468; *County Exec., Prince George's County v. Doe, supra*, 300 Md. at 452–456, 479 A.2d at 355–358; *Lambros v. Brown, supra*, 184 Md. at 354–355, 41 A.2d at 79–80; *B & O Rail Road Co. v. Glenn, supra*, 28 Md. at 322. *See also LaChance v. Service Trucking Co., supra*, 215 F.Supp. at 162–163.

The principle that Maryland courts will entertain civil causes of action arising under the laws of other jurisdictions reflects the nature of judicial jurisdiction and the differences between " 'the political jurisdiction of a State [and] its judicial jurisdiction.' " *Hansford v. District of Columbia*, 329 Md. 112, 129, 617 A.2d 1057, 1065, *cert. denied*, 509 U.S. 905, 113 S.Ct. 2997, 125 L.Ed.2d 690 (1993), quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482, 101 S.Ct. 2870, 2877, 69 L.Ed.2d 784, 794 (1981). This Court in *Hansford* continued (329 Md. at 130, 617 A.2d at 1065, quoting the *Gulf Offshore* opinion, 453 U.S. at 481, 101 S.Ct. at 2877, 69 L.Ed.2d at 793):

" ' "The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe." The Federalist No. 82, p. 514 (H. Lodge ed. 1908) (Hamilton), quoted in *Claflin v. Houseman*, 93 U.S. [130] at 138 [23 L.Ed. 833 (1876) ]. State courts routinely exercise subject-matter jurisdiction over civil cases arising from events in

other States and governed by the other States' laws. See, *e.g., Dennick v. Railroad Co.,* 103 U.S. 11[, 26 L.Ed. 439] (1880). Cf. *Allstate Ins. Co. v. Hague,* 449 U.S. 302[, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) ].' "

*See also American Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 578 n. 4, 659 A.2d 1295, 1304 n. 4 (1995).

This characteristic of judicial jurisdiction is reflected in the statutory provisions relating to Maryland circuit courts. Maryland Code (1974, 2002 Repl.Vol.), § 1–501 of the Courts and Judicial Proceedings Article states:

" § 1–501. **Jurisdiction and powers in general.**

The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, *except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.*" (Emphasis added).

 Consequently, unless a civil cause of action under another jurisdiction's law is the type which the Maryland General Assembly has limited or conferred upon a different tribunal, Maryland circuit courts have subject matter jurisdiction over the cause of action. Circuit courts do not require expressed statutory authorization to entertain a particular type of civil action; instead, they have jurisdiction over civil causes of action generally. *See, e.g., In re Heilig,* 372 Md. 692, 712–721, 816 A.2d 68, 80–86 (2003) (Circuit court has jurisdiction to issue an order changing the plaintiff's gender identity, even though, under the circumstances, there was no statutory basis for the order except the general circuit court jurisdiction statute, § 1–501 of the Courts and Judicial Proceedings Article); *County Exec. Prince George's County v. Doe, supra,* 300 Md. at 453–454, 479 A.2d at 356–357 ("As the circuit courts in Maryland generally have jurisdiction over all causes of action except to the extent the General Assembly or the Constitution limit that jurisdiction or confer it exclusively

upon another tribunal, and as the General Assembly has not attempted to exclude § 1983 actions from the jurisdiction of the circuit courts, we have taken the position that § 1983 actions may be brought in Maryland circuit courts. *De Bleecker v. Montgomery County*, 292 Md. 498, 500, 511–513, 438 A.2d 1348 (1982)"). *See also Lambros v. Brown, supra*, 184 Md. at 356, 41 A.2d at 80 ("There is ample authority, both in this Court and in the Supreme Court of the United States, for the doctrine that competent state courts should take jurisdiction of suits authorized by Acts of Congress. This is sometimes placed . . . upon the theory that where exclusive power is not given to the United States by the Constitution, the state courts retain their general jurisdiction over all matters not thus taken away." In *Lambros*, because of the amount of money involved, this Court held that the federal cause of action could be brought in the People's Court of Baltimore City, which was one of the predecessor courts to the District Court of Maryland).

■ There is an exception to the rule that Maryland courts will entertain causes of action created by the laws of another jurisdiction, namely where such laws or causes of action are contrary to Maryland public policy. Nevertheless, "for another state's law to be unenforceable, there must be 'a strong public policy against its enforcement in Maryland,'" *Bethlehem Steel v. G.C. Zarnas & Co.*, 304 Md. 183, 189, 498 A.2d 605, 608 (1985), quoting *Texaco v. Bosche, supra*, 242 Md. at 340–341, 219 A.2d at 84. *See also, e.g., Ward v. Nationwide Ins., supra*, 328 Md. at 247, 614 A.2d at 88 (referring to the "limited exception where . . . the foreign law is contrary to a very strong Maryland public policy"); *Allstate Ins. Co. v. Hart*, 327 Md. 526, 530, 611 A.2d 100, 102 (1992) (For the exception to apply, " 'the public policy must be very strong and not merely a situation in which Maryland law is different from the law of another jurisdiction,'"§ quoting *Kramer v. Bally's Park Place, supra*, 311 Md. at 390, 535 A.2d at 467).

■ This "public policy" exception, however, has no application where the law of the "other jurisdiction" is federal law.

This Court explained in *County Exec. Prince George's County v. Doe, supra,* 300 Md. at 454, 479 A.2d at 357, quoting *Mondou v. New York, N.H. & H.R. Co.,* 223 U.S. 1, 57, 32 S.Ct. 169, 178, 56 L.Ed. 327, 349 (1912), as follows:

" 'The suggestion that the act of Congress is not in harmony with the policy of the state ... is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all. That policy is as much the policy of [the state] as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State.' "

We continued in the *Doe* case (300 Md. at 445, 479 A.2d at 357):

"Moreover, and contrary to the defendants' argument in the present case, a state court exercising jurisdiction in a federal cause of action may not refuse to apply federal law in one particular respect where such law is deemed inconsistent with 'state policy.' Instead, the *entire* federal substantive law is applicable."

In *Lambros v. Brown, supra,* 184 Md. at 357, 41 A.2d at 81, Chief Judge Ogle Marbury for the Court, quoting from *Claflin v. Houseman,* 93 U.S. 130, 137, 23 L.Ed. 833, 838 (1876), stated:

" 'The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State.... The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on an erroneous view of the nature and relations of the State and the Federal governments.' "

*See also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 275, 117 S.Ct. 2028, 2037, 138 L.Ed.2d 438, 452 (1997) ("The Constitution and laws of the United States are not a body of law external to the States, acknowledged and enforced simply as a matter of comity"); *Maryland–National Capital Park & Planning Comm'n v. Crawford,* 307 Md. 1, 14, 511 A.2d 1079, 1085–1086 (1986) ("[I]f Congress . . . intended" that the federal cause of action should be entertained by state courts, "then the 'Maryland policy' . . . would be immaterial"); *Ordway v. Central Nat. Bank,* 47 Md. 217, 248 (1877) (Judge Alvey for the Court stated: "[T]herefore, whether the right to maintain this action be placed upon the express terms of the [federal] statute giving cognizance to the State courts, or simply upon the non-exclusion of State jurisdiction, in either case the action is maintainable. And that the [federal] cause of action is a penalty, to be recovered in a civil action . . . by the party grieved, constitutes no objection to the State courts taking cognizance of it, and enforcing the right"); Maryland Declaration of Rights, Article 2 ("The Constitution of the Untied States, and the Laws made, or which shall be made, in pursuance thereof, . . . are, and shall be the Supreme Law of the State . . .").

 Moreover, the authority of a state to preclude its courts from entertaining federal causes of action is quite limited. Generally, a state law "discriminating against federal causes of action" violates the Supremacy Clause of the United States Constitution.[4] *Howlett v. Rose,* 496 U.S. 356, 366, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332 (1990). The Supreme Court in *Howlett v. Rose* continued (496 U.S. at 367, 110 S.Ct. at 2438, 110 L.Ed.2d at 347):

"Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and laws passed pursuant to it are as much laws in the State as laws passed by the state

---

4. Article VI, Cl. 2, of the Constitution of the United States.

legislature. The Supremacy Clause makes those laws 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure. 'The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are....' *Claflin v. Houseman,* 93 U.S. 130, 136–137, [23 L.Ed. 833] (1876)."

The *Howlett* opinion, reviewing numerous earlier cases, reiterated that "[a] state court may not deny a federal right, when the parties and controversy are properly before it, in the absence of 'valid excuse,' " 496 U.S. at 369, 110 S.Ct. at 2439, 110 L.Ed.2d at 348. The Court pointed out that state law "disagreement" with federal law "is not a valid excuse," 496 U.S. at 371, 110 S.Ct. at 2440, 110 L.Ed.2d at 350, but that a state may ordinarily apply to the federal cause of action "a neutral state rule regarding the administration of the courts" or its "own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law," 496 U.S. at 372, 110 S.Ct. at 2440–2441, 110 L.Ed.2d at 351. The Supreme Court in *Howlett* invalidated Florida law which precluded Florida courts, on governmental immunity grounds, from entertaining actions under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

*McKnett v. St. Louis & S.F. Ry. Co.,* 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227 (1934), involved an Alabama statute granting to Alabama courts jurisdiction over suits against foreign corporations based on causes of action arising under the laws of other states, but the statute did not encompass such causes of action arising under federal law. Relying on the statute, the Alabama courts refused to entertain a cause of action against a foreign corporation under the Federal Employers' Liability Act (FELA). The refusal to exercise jurisdiction was defended on the ground that the statute did not single out just FELA cases but applied to all federal causes of action against foreign corporations which did not arise out of Alabama law. The defendant relied on the principle that "a state may determine the limits of the jurisdiction of its courts, [and] the

character of the controversies which shall be heard in them," *McKnett v. St. Louis & S.F. Ry. Co., supra,* 292 U.S. at 232, 54 S.Ct. at 691, 78 L.Ed. at 1228. The Supreme Court, however, in an opinion by Justice Brandeis, reversed the refusal to entertain the action and reviewed some of the limits upon a state's authority over the jurisdiction of its courts (292 U.S. at 233–234, 54 S.Ct. at 691–692, 78 L.Ed. at 1229):

"The power of a State to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard in them is, of course, subject to the restrictions imposed by the Federal Constitution. The privileges and immunities clause requires a state to accord to citizens of other states substantially the same right of access to its courts as it accords to its own citizens. . . . The full faith and credit clause requires a state court to take jurisdiction of an action to enforce a judgment recovered in another state, although it might have refused to entertain a suit on the original cause of action as obnoxious to its public policy. . . . By *Mondou v. New York, N.H. & H.R. Co.,* 223 U.S. 1, [32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.(N.S.) 44,] an action in a Connecticut court against a domestic corporation, it was settled that a state court whose ordinary jurisdiction as prescribed by local laws is appropriate for the occasion, may not refuse to entertain suits under the Federal Employers' Liability Act.

"While Congress has not attempted to compel states to provide courts for the enforcement of the Federal Employers' Liability Act, . . . the Federal Constitution prohibits state courts of general jurisdiction from refusing to do so solely because the suit is brought under a federal law. The denial of jurisdiction by the Alabama court is based solely upon the source of law sought to be enforced. The plaintiff is cast out because he is suing to enforce a federal act. A state may not discriminate against rights arising under federal laws."

*See also, e.g., National Private Truck Council, Inc. v. Oklahoma Tax Commission,* 515 U.S. 582, 587, 115 S.Ct. 2351, 2355, 132 L.Ed.2d 509, 516 (1995) ("When they have jurisdic-

tion, state courts have been compelled to provide federal remedies, notwithstanding the existence of less intrusive state-law remedies"); *Felder v. Casey,* 487 U.S. 131, 150, 151, 108 S.Ct. 2302, 2313, 2314, 101 L.Ed.2d 123, 146 (1988) ("Federal law takes state courts as it finds them only insofar as these courts employ rules that do not 'impose unnecessary burdens upon the rights of recovery authorized by federal laws.' * * * Just as federal courts are constitutionally obliged to apply state law to state claims, . . . so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner than all the substantial rights of the parties under controlling federal law [are] protected' "); *Testa v. Katt,* 330 U.S. 386, 394, 67 S.Ct. 810, 814, 91 L.Ed. 967, 972 (1947) (A state has no "right . . . to deny enforcement to claims growing out of a valid federal law"); *Maryland–National Capital Park & Planning Comm'n v. Crawford, supra,* 307 Md. at 14, 511 A.2d at 1085.

### III.

■ Against the above-summarized background, we now turn specifically to the private federal cause of action created by the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3).

### A.

The Telephone Consumer Protection Act was enacted in response to what Congress perceived to be the growing problem of the use of automated telephone equipment to make unsolicited telephone calls and faxes. The Act imposed restrictions on the use of such equipment, and made it illegal, *inter alia,* "to use any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). The Act also created a private right of action in 47 U.S.C. § 227(b)(3) (emphasis added):

"A person or entity may, *if otherwise permitted by the laws or rules of court of a State,* bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions."

The issue in this case concerns the Congressional intent underlying the phrase "if otherwise permitted by the laws or rules of court of a State," along with the relationship between the language of the federal statute and state law. Among the petitioner, the *amici*, the Court of Special Appeals, and cases in other states, four different interpretations have been advanced.

*First*, the petitioner and the individual *amicus* supporting the petitioner argue that the phrase simply allows the states, in the enforcement of the federal cause of action, to apply neutral state laws or rules regarding the administration of the state courts or neutral procedural laws or rules. The language does not, in their view, allow a state to discriminate against the federal cause of action or refuse to enforce it because it is a federal cause of action. In other words, the petitioner and *amicus* contend that the statutory language was simply designed to reflect the Supremacy Clause holdings of *Howlett v. Rose, supra,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332; *Testa v. Katt, supra,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967; *McKnett v. St. Louis & S.F. Ry. Co., supra,* 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227; *Mondou v. New York, New Haven & Hartford R. R., supra,* 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327, and similar cases. Several state appellate courts appear to have adopted this position. *See Condon v. Office Depot, Inc.,* 855 So.2d 644, 647 (Fla.App.2003) ("[W]e interpret the language 'if otherwise permitted' to acknowledge the principle that states have the right to structure their own court systems and that state courts are not obligated to change their procedural rules or to create courts to accommodate TCPA claims," relying upon *Howlett v. Rose, supra* ); *Mulhern v. MacLeod,* 441 Mass. 754, 757, 808 N.E.2d 778, 780

(2004) ("The 'if otherwise permitted' language was more likely intended to reflect that Federal claims remain subject to State procedural law," also relying on *Howlett v. Rose, supra* ); *Zelma v. Market U.S.A.,* 343 N.J.Super. 356, 362, 778 A.2d 591, 595 (2001) ("[T]he courts of this State have always embraced the principle that unless the federal act itself expressly or impliedly precludes states from assuming jurisdiction, the general jurisdiction of our courts will encompass federal statutory causes of action"); *Schulman v. Chase Manhattan Bank,* 268 A.D.2d 174, 177, 179, 710 N.Y.S.2d 368, 371, 372 (2000) (The defendant's "interpretation of the statute is inconsistent with established principles governing State court jurisdiction over claims based on Federal laws. * * * We therefore conclude that the phrase 'if otherwise permitted by the laws or rules of court of a State' merely acknowledges the principle that States have the right to structure their own court systems and that State courts are not obligated to change their procedural rules to accommodate TCPA claims").

*Second,* the State of Maryland, as *amicus curiae* urging a reversal, argues that the language of the federal statute does authorize a state to prohibit private suits under the statute but that the state legislature must do so affirmatively and expressly. According to the State of Maryland, the General Assembly's inaction subsequent to the enactment of the federal statute means that Maryland courts are authorized to entertain the federal cause of action. The petitioner also advances this position as an alternative argument. In addition, the United States Court of Appeals for the Fourth Circuit, in *International Science & Technology Institute v. Inacom Communications,* 106 F.3d 1146, 1155–1158 (4th Cir.1997), seemed to share this view that a state legislature could affirmatively prohibit the state's courts from entertaining private actions for damages under the federal Telephone Consumer Protection Act.[5] Those states which have not adopted the first interpreta-

---

5. This was not the issue before the court in the *International Science* case. Instead, the issue was whether a federal district court had concurrent jurisdiction to entertain private actions under the Act, and

tion of the federal statute, as set forth above, have at least taken this position. *See Lary v. Flasch Bus. Consulting, Inc.,* 878 So.2d 1158 (Ala.App.2003); *Kaufman v. ACS Systems, Inc.,* 110 Cal.App.4th 886, 2 Cal.Rptr.3d 296 (2003); *Hooters of Augusta, Inc. v. Nicholson,* 245 Ga.App. 363, 537 S.E.2d 468 (2000); *Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907 (Mo.2002); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.,* 135 S.W.3d 365 (Tex.App.2004).[6]

*Third,* the Court of Special Appeals held, and one of the *amici* supporting an affirmance argues, that the private action provision of the Telephone Consumer Protection Act does authorize a state to prohibit private actions under the federal statute, that the state legislature need not do so affirmatively and expressly, and that the role of a court is to ascertain the state legislature's intent as reflected in existing state statutes.

---

the United States Court of Appeals for the Fourth Circuit held that federal district courts lacked such jurisdiction and that exclusive jurisdiction over private actions under the federal statute was in the state courts. Other federal courts have also held that Congress vested exclusive jurisdiction over private actions under the Act in the state courts. *See Murphey v. Lanier,* 204 F.3d 911, 914 (9th Cir.2000) ("the conclusion that there is no federal jurisdiction over private actions under the TCPA does not hang on the meaning of the word 'may,' but on the statute's express mention of state court jurisdiction and its silence on the matter of federal jurisdiction"); *Erienet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513 (3d Cir.1998) (accepting the holding of *International Science, supra,* that the federal statute "intended to authorize private causes of action *only* in state court"); *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.,* 156 F.3d 432, 438 (2d Cir.1998) ("Congress intended to confer exclusive state court jurisdiction over private rights of action" under the Act); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287, 1289, modified 140 F.3d 898 (11th Cir.1998) ("Congress intended to assign the private right of action [under the Act] to state courts exclusively"); *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 510 (5th Cir.1997) (holding that there was no federal subject matter jurisdiction under the private cause of action provision of the Act).

**6.** An earlier Texas intermediate appellate court case had taken the position that the federal private cause of action could not be entertained by state courts unless the state legislature authorized the action. *Autoflex Leasing, Inc. v. Mfrs. Auto Leasing,* 16 S.W.3d 815 (Tex.App.2000). That earlier case, however, has been discredited by an enactment by the state legislature and the most recent Texas appellate opinion.

As earlier indicated, the Court of Special Appeals went on to hold that Maryland Code (1975, 2000 Repl.Vol.), § 14–1313 of the Commercial Law Article, authorizing a civil action by the Maryland Attorney General when unsolicited facsimile transmissions are made in violation of the state statute, and subsequent inaction, indicated a state legislative intent that private actions under the federal statute could not be entertained by Maryland courts.

*Fourth,* one of the *amicus* favoring an affirmance suggests, at one point in its brief, "that an 'express' or affirmative action must be taken [by a state legislature] in order to 'permit'" private actions under the federal Telephone Consumer Protection Act. (Brief of *amicus curiae,* DirecTV, Inc., at 15). The Court of Special Appeals also discussed this position, but the appellate court held that it was "unnecessary for us to decide in this case whether the General Assembly must expressly 'opt in' to the jurisdiction granted the states in 47 U.S.C. § 227(b)(3)," because of the court's holding that § 14–1313 of the Commercial Law Article evidenced the General Assembly's intent to preclude private actions. *R.A. Ponte Architects v. Investors' Alert, supra,* 149 Md.App. at 237–238, 815 A.2d at 827.

We agree with the petitioner's basic position in this case. The phrase "if otherwise permitted by the laws or rules of a court of a State" simply expresses the congressional recognition that neutral state laws and rules concerning the general jurisdiction of state courts and procedures therein are applicable to the federal cause of action. This view is supported by the pertinent language of the federal statute, the legislative history, the principles of statutory construction governing state court jurisdiction over federal causes of action, and decisions by other state courts.

Moreover, even if Congress had intended to authorize a state legislature to discriminate against the federal private cause of action created by 47 U.S.C. § 227(b)(3) and preclude any of that state's courts from entertaining such cases— something that perhaps would be unprecedented in American

history—we disagree with the Court of Special Appeals that the General Assembly did so by enacting § 14–1313 of the Commercial Law Article and by not subsequently enacting legislation concerning unlawful unsolicited telephone facsimile transmissions.

## B.

Congress enacted the Telephone Consumer Protection Act in November 1991, and it was signed into law in December of that year. The purpose of the Act was to address telemarketing practices that were made possible by technological changes that resulted, *inter alia,* in a substantial increase in unsolicited commercial telephone calls and faxes, and the resulting expense and disruption imposed on the recipients. At that point in time, some states had begun to take action to restrict such telemarketing practices. *See* S.Rep. No. 102–178 at 3; H.R.Rep. No. 102–317, 1st Sess., at 25 (1991). Maryland had enacted its own statute prohibiting such "junk faxes" two years prior to the passage of the federal Act. *See* § 14–1313 of the Commercial Law Article. State laws, however, had limited effect because states did not have jurisdiction over interstate calls. The federal law was primarily intended to reach unsolicited facsimile and other telephone communications that crossed state lines, and fell outside the jurisdiction of the states. *See* S.Rep. No. 102–178 at 5; H.R.Rep. No. 102–317, 1st Sess. at 25 (1991).

The proposed legislation which became the Telephone Consumer Protection Act was favorably reported by the Senate Committee on Commerce, Science, and Transportation, and considered on the floor of the Senate on November 7, 1991. *See* 137 Cong. Rec. 30820. The proposal was in the form of two separate bills. One bill, sponsored by Senator Hollings of South Carolina, contained regulations covering automatic telephone dialing system calls and unsolicited advertisements by telephone facsimile machines. 137 Cong. Rec. 30820–30821. The other bill, sponsored by Senator Pressler of South Dakota, dealt with calls from "live persons." 137 Cong. Rec. 30824.

When the proposed legislation reached the Senate floor, neither bill contained a provision for private causes of action.

On the floor of the Senate on November 7, 1991, two "amendments," or "substitute bills" as they are sometimes referred to, were offered. Senator Hollings, the chief sponsor of one of the bills, offered Amendment No. 1311 to his bill relating to telephone calls using automated equipment and unsolicited advertisements by telephone facsimile machines. 137 Cong. Rec. 30821–30824. The other "amendment" or "substitute bill," offered by Senator Pressler, was to his bill concerning unwanted telephone calls from "live persons." 137 Cong. Rec. 30824.

Both Senator Hollings's amendment to the bill regulating automated telephone calls and facsimile transmissions, and Senator Pressler's amendment to the bill regulating certain live unwanted telephone calls, provided for private causes of action in state courts. The private cause of action provision concerning automatic telephone calls and facsimile transmissions was enacted and is now codified as 47 U.S.C. § 227(b)(3). It is the provision before us today. The private cause of action subsection relating to certain live unwanted telephone calls was also enacted and is codified as 47 U.S.C. § 227(c)(5). The critical language in both provisions, *i.e.* the phrase "if otherwise permitted by the laws or rules of court of a state," is identical.[7]

---

7. Interestingly, the Court of Special Appeals in *Worsham v. Nationwide*, 138 Md.App. 487, 772 A.2d 868, *cert. denied*, 365 Md. 268, 778 A.2d 383 (2001), decided that the Circuit Court for Harford County should entertain a private cause of action under 47 U.S.C. § 227(c)(5). Moreover, the opinion in the *Worsham* case drew no distinction between § 227(b)(3) and § 227(c)(5). The Court of Special Appeals stated in *Worsham*, 138 Md.App. at 496–497, 772 A.2d at 874:

" 'In the absence of a[s]tate statute declining to exercise the jurisdiction authorized by the [TCPA], a[s]tate court has jurisdiction over TCPA claims.' *Kaplan v. Democrat & Chronicle*, 266 A.D.2d 848, 698 N.Y.S.2d 799, 800 (N.Y.App.Div.1999); *see Int'l Science & Tech. Inst. v. Inacom Communications*, 106 F.3d 1146, 1158 (4th Cir.1997). Thus far, Maryland has not refused to exercise such jurisdiction. Accordingly, our state courts are faced with the extraordinary situation of having exclusive jurisdiction over a private right of action

In introducing the "amendment" or "substitute bill" containing the private cause of action codified as 47 U.S.C. § 227(b)(3), Senator Hollings initially set forth some of the background for the provision (137 Cong. Rec. 30821):

"The telemarketing industry appears oblivious to the harm it is creating. Two months ago, a representative of the Direct Marketing Association said on television that telemarketers have a right to call us in our homes. This is absurd. I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.' "

"Mr. President, I originally introduced this bill on July 11 of this year. Since then, my constituents in South Carolina and citizens around the country have deluged my office with letters of support for this bill. Senator INOUYE, the chairman of the Communications Subcommittee, held a hearing on the bill on July 24. Not one party at that hearing testified in opposition to the bill. Because of the enormous public support, the bill was ordered reported by the Com-

---

brought under federal law. *See, e.g., Murphey v. Lanier,* 204 F.3d 911, 915 (9th Cir.2000) (joining Second, Third, Fourth, Fifth, and Eleventh Circuits in ' "the somewhat unusual conclusion that state courts have exclusive jurisdiction over a cause of action created by a federal statute, the Telephone Consumer Protection Act of 1991" ') (citations omitted)."

In the instant case, however, the Court of Special Appeals did attempt to draw a distinction between the two private causes of action, stating that "it is evident that our legislature has chosen to treat telephone and facsimile solicitations differently, providing for a private cause of action for one, but not the other, in our Commercial Law Article." *R.A. Ponte Architects v. Investors' Alert,* 149 Md.App. 219, 237, 815 A.2d 816, 827 (2003). Moreover, the Court of Special Appeals in the present case seemed to view the distinction between 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(c)(5) as a distinction between facsimile transmissions and telephone calls. *See Ponte,* 149 Md.App. at 236–239, 815 A.2d at 826–828. Actually, the distinction is between automated telephone calls and facsimile transmissions on the one hand, and telephone calls from "live persons" on the other. The brief of one of the *amici* urging an affirmance also confuses the distinction between the two private action provisions.

merce Committee, which I chair, and without objection on July 31.

"Mr. Steve Hamm, administrator of the Department of Consumer Affairs in South Carolina, informed me that his office receives more complaints about computerized telephone calls and 900 numbers than any other problems. Despite the fact that South Carolina recently passed legislation to protect consumers from unwanted computerized calls within our State, South Carolina consumers continue to suffer from computerized calls made from out-of-State. The State law does not, and cannot, regulate interstate calls. Only Congress can protect citizens from telephone calls that cross State boundaries. That is why Federal legislation is essential."

Senator Hollings next addressed the private cause of action provision (137 Cong. Rec. 30821–30822, emphasis added):

"The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. *The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine.* Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. The consumer outrage at receiving these calls is clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue.

"Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act

reasonably in permitting their citizens to go to court to enforce this bill."

The above-quoted statements by Senator Hollings contain essentially the whole legislative history underlying the private cause of action provision in 47 U.S.C. § 227(b)(3).

The language of 47 U.S.C. § 227(b)(3), coupled with the sponsor's explanation of the provision, leaves little doubt concerning its meaning. The phrase "if otherwise permitted by the laws or rules of court of a state" certainly appears to refer to the neutral general jurisdictional and procedural laws and rules governing each state's court system. If Congress were referring to substantive telemarketing legislation enacted by state legislatures, it is doubtful that it would have referred to such legislation as laws or rules "of court." The word "otherwise" suggests state laws and rules other than the telemarketing law which was the subject of the federal legislation. Moreover, the phrase seems to contemplate laws or rules in effect among all of the several states. In 1991, however, some states had not regulated automated telephone calls and unsolicited commercial messages to telephone facsimile machines.

Senator Hollings's explanation of the provision makes it clear that the critical language simply reflected the constitutional principles set forth in *Claflin v. Houseman, supra,* 93 U.S. 130, 23 L.Ed. 833; *Mondou v. New York, N.H. & H.R. Co., supra,* 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327; *McKnett v. St. Louis & S.F. Ry. Co., supra,* 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227, and their progeny. According to Senator Hollings, the language, "because of constitutional constraints," did not "dictate to the States *which court in each state* shall be the proper venue for such action, as this is a matter for State legislators to determine." (Emphasis added). What Congress did not mandate was which court in a particular state had jurisdiction over the cause of action. What was left for the determination of state legislators was the "proper venue."

The substantive issue of whether the federal cause of action should be entertained in the appropriate state court was *not* a matter left to state legislators. While leaving to the states the

determination of "the proper venue," the sponsor of the federal statute hoped that state legislatures would allow injured consumers to bring the actions in small claims or similar courts rather than in superior courts of general jurisdiction with their higher costs and substantial attorneys' fees. *See Mulhern v. MacLeod, supra,* 441 Mass. at 758–759, 808 N.E.2d at 781, where the Massachusetts Supreme Judicial Court recently, after quoting Senator Hollings's statements, reached the same conclusion. *See also Condon v. Office Depot, Inc., supra,* 855 So.2d at 648 ("Senator Hollings thus expected state legislation to address issues such as venue").

### C.

The *amici* supporting an affirmance argue that the word "laws" in the "otherwise permitted" clause of 47 U.S.C. § 227(b)(3) has a "plain" meaning and refers to substantive state laws concerning unsolicited commercial telephone facsimile transmissions. PrimeTV contends (brief at 21): "Just as 'rules of court' refers to procedure, 'laws' clearly refers to substance—particularly when juxtaposed with 'rules of court.' "

The language of § 227(b)(3), however, does not have this "plain" meaning. *Amici* overlook the fact that, with respect to both the federal government and the states, the monetary jurisdiction of different courts is determined by statutes enacted by legislative bodies. The same is true, subject to state constitutional requirements, concerning the general types of actions that may be brought in particular courts, the nature of the relief available in different courts, the availability of jury trials in some courts but not in others, etc.

Furthermore, in many states the state supreme courts do not have constitutional legislative authority, on their own, to promulgate rules of practice and procedure. Prior to the adoption of Article IV, § 18(a), of the Maryland Constitution in 1944, this Court did not have broad constitutionally based power to adopt rules of practice and procedure. Moreover,

even today, Article IV, § 18(a), grants to the General Assembly concurrent jurisdiction over matters of procedure.[8]

Even if Congress was using the word "laws" to mean enactments by state legislatures, there is no basis in the language of the statute or its legislative history to conclude that it was referring to statutes dealing with automatic telephone calls and unsolicited advertisements to telephone facsimile machines. Instead, particularly in light of Senator Hollings's explanation, it seems clear that the word "laws" covered matters such as the monetary jurisdiction of state courts and procedure in those courts.

There is another reason militating against construing "laws" to mean state laws regulating automated telephone calls and advertisements to telephone facsimile machines. Such state laws, to the extent that they existed in 1991, and the federal Telephone Consumer Protection Act, were primarily aimed at different activities. The legislative history shows that the purpose of the federal statute was to fill a void which could not be covered by state statutes. As Senator Hollings stated, "State law does not, and cannot, regulate interstate calls. Only Congress can protect citizens from unwanted telephone calls that cross State boundaries." 137 Cong. Rec. 30821. It is highly unlikely that Congress intended to incorporate by reference state laws concerning intrastate activity in a federal statute chiefly aimed at interstate activity.[9] The federal statute was designed to fill a void in state laws; it was not

---

8. The Constitution of South Carolina, the State represented by Senator Hollings, in Article V, §§ 4 and 4A, grants to the Supreme Court of South Carolina authority to promulgate rules of practice and procedure for that State's courts, but requires that the Supreme Court submit such proposed rules to the General Assembly. Section 4A states in part: "Such rules or amendments shall become effective ninety calendar days after submission unless disapproved by concurrent resolution of the General Assembly...."

9. In pointing out that the federal statute was focused upon interstate activity, we do not suggest that the statute does not also encompass intrastate activity. *See, e.g., Hooters of Augusta, Inc. v. Nicholson,* 245 Ga.App. 363, 366–367, 537 S.E.2d 468, 471 (2000).

intended to be a statute limited by state laws which Congress deemed inadequate.

The *amici* urging an affirmance also contend that, if the "otherwise permitted" clause of 47 U.S.C. § 227(b)(3) simply refers to the constitutional principles set forth in Supreme Court opinions such as *Howlett v. Rose, supra,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332; *Testa v. Katt, supra,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967, and similar cases, the clause would be "surplusage" because those constitutional principles would still be applicable in the absence of the clause. Nevertheless, legislative bodies often refer to the pertinent constitutional principles underlying legislation even though such references may not, strictly, be required. For example, when Congress enacts legislation under its Commerce Clause power, it will often refer to the underlying constitutional principle or the constitutional provision.[10] Legislation in the criminal law field sometimes will recite that it applies only to offenses committed after the effective date of the statute, even though constitutional *ex post facto* principles would require the same result.[11]

Furthermore, there are situations where neutral state jurisdictional or procedural rules have been held inapplicable to federal causes of action in state courts. *See, e.g., Felder v. Casey, supra,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123. Thus, the insertion of the state "laws or rules of court" clause may have been an exercise of caution rather than "surplusage." In light of the sponsor's concern over the "proper

---

10. *See, e.g.,* 18 U.S.C. § 247(b) and Section 2(5) of Pub.L. 104–155 ("Congress has authority, pursuant to the Commerce Clause of the Constitution, to make acts of destruction to religious property a violation of Federal law"); 42 U.S.C. § 2000a(c) (Commerce Clause basis for federal Public Accommodations law).

11. *See, e.g.,* Laws of Maryland 1978 at 2503–2504, Ch. 849 of the Acts of 1978, § 7, ("[T]his Act shall be construed only prospectively and the provisions of this Act apply only to offenses committed on or after the effective date of this Act, and may not be applied or interpreted to have any effect upon or application to any event or happening occurring prior to the effective date of this Act"); Laws of Maryland 1976 at 1540, Ch. 573 of the Acts of 1976, § 4 (same).

venue" for actions under 47 U.S.C. § 227(b)(3), and his deference to state legislators concerning the proper venue and procedure for the federal cause of action, the reference to state "laws or rules of court" is understandable.

## D.

■ Typically when Congress creates a civil cause of action, it authorizes federal trial courts to entertain the cause of action. It sometimes expressly grants concurrent jurisdiction to state trial courts. When Congress is silent concerning state court jurisdiction over federal causes of action, there is a "deeply rooted presumption in favor of concurrent state court jurisdiction," *Tafflin v. Levitt*, 493 U.S. 455, 459, 110 S.Ct. 792, 795, 107 L.Ed.2d 887, 894 (1990). *See also Gulf Offshore Co. v. Mobil Oil Corp., supra,* 453 U.S. at 478, 101 S.Ct. at 2875, 69 L.Ed.2d at 791 ("In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction"). In all of these instances of concurrent state court jurisdiction over federal civil causes of action, the Supremacy Clause principles set forth in *Howlett v. Rose, supra,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332; *Testa v. Katt, supra,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967, and similar cases have been held applicable, and states have been precluded from discriminating against the federal cause of action. It would be an extreme anomaly, in the unusual situation where state courts have apparently been given exclusive jurisdiction over the federal cause of action, for Congress to have intended that states could discriminate against the federal cause of action. Moreover, several state appellate courts have relied upon the presumption of state court jurisdiction over federal causes of action in holding that private causes of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, may be brought in the courts of those states. *See, e.g., Condon v. Office Depot, Inc., supra,* 855 So.2d at 647 ("There is a presumption of state court jurisdiction over claims arising under federal law"); *Mulhern v. MacLeod, supra,* 441 Mass. at 756, 808 N.E.2d at 780 ("The obligation on State courts to

hear Federal causes of action is not self-imposed by enabling legislation, but arises under the supremacy clause. . . . We therefore begin with the presumption that Federal causes of action are enforceable in the courts of the Commonwealth"); *Schulman v. Chase Manhattan Bank, supra,* 268 A.D.2d at 177, 710 N.Y.S.2d at 371 ("State courts are courts of general jurisdiction and are presumed to have jurisdiction over Federally created causes of action unless Congress dictates otherwise"); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc., supra,* 135 S.W.3d at 381.

When Congress has enacted social or economic programs to be administered by the executive branches of the federal and state governments, it has sometimes provided that a state may "opt out" of the program. On the other hand, Congress has been creating federal causes of action, which can be brought in state courts, since 1789. *See Pine Street Trading v. Farrell Lines, supra,* 278 Md. at 379–380, 364 A.2d at 1114, and cases there collected, involving federal maritime causes of action in state courts pursuant to § 9 of the Judiciary Act of 1789. Neither the parties nor the *amici* nor the courts below have cited a single instance where Congress has created a federal cause of action, which can be brought in state courts, where there exist jurisdictionally appropriate state courts, and where state law has been permitted to discriminate against the federal cause of action. Although such an instance might have occurred, it would be extremely rare. The Supreme Court's opinions from *Claflin v. Houseman, supra,* 93 U.S. 130, 23 L.Ed. 833, until the present, all indicate that state law cannot discriminate against federal causes of action. If Congress were to authorize such an unusual and unprecedented result, one would expect that it would do so expressly and unequivocally. Absent such a clear congressional statement, the normal rule precluding state law discrimination against federal causes of action should apply.

### E.

Finally, even if Congress in 47 U.S.C. § 227(b)(3) had intended to authorize a state legislature to discriminate

against the federal private cause of action created by that statute (and, as we have held above, we reject such an interpretation), the result in the case at bar would be no different. The Court of Special Appeals, in our view, erred in attributing to the Maryland General Assembly an intent to disallow the federal private cause of action.

The Court of Special Appeals relied on the facts that § 14–1313 of the Commercial Law Article does not provide for a private cause of action, and that the General Assembly has chosen neither to amend it nor to take other action allowing a private cause of action for unsolicited commercial facsimile transmissions.

Section 14–1313 of the Commercial Law Article was enacted two years prior to the enactment of the federal statute, 47 U.S.C. § 227(b)(3). Consequently, § 14–1313 could hardly show a state legislative intent to preclude the private cause of action created by the federal statute. Furthermore, no enactment by the General Assembly since that time has reflected any legislative policy hostile to a private cause of action on behalf of individuals aggrieved by conduct prohibited by the federal Telephone Consumer Protection Act. In addition, no other viable appellate opinion supports the Court of Special Appeals' view that a state legislature's inaction precludes state courts from entertaining a private civil action under 47 U.S.C. § 227(b)(3).

If we were to construe the federal statute, 47 U.S.C. § 227(b)(3), as authorizing a state legislature to "opt out" of the private cause of action created by that statute, and if we were to construe § 14–1313 of the Commercial Law Article, coupled with the legislative inaction after the enactment of § 14–1313, as a decision by the General Assembly to preclude Maryland courts from entertaining the federal cause of action, the consequences would be quite strange.

The result of such interpretations would be a private federal cause of action by an injured person for money damages without any forum in Maryland authorized to entertain that cause of action. The aggrieved individual could not sue in a

federal district court because Congress apparently vested exclusive jurisdiction in the state courts over the cause of action. He or she could not bring the action in Maryland state courts because, under this interpretation of the federal and state statutory enactments, the General Assembly would have directed Maryland courts to refrain from entertaining the cause of action. Finally, neither Congress nor the General Assembly have provided for an adjudicatory administrative proceeding which the injured party may bring.

This result might well present serious constitutional problems under the Supremacy Clause of the United States Constitution and/or Articles 2 and 19 of the Maryland Declaration of Rights. *Cf. Robinson v. Bunch*, 367 Md. 432, 442–447, 788 A.2d 636, 642–645 (2002).[12]

 "We have consistently followed 'the principle that a court will, whenever reasonably possible, construe and apply a statute to avoid casting serious doubt upon its constitutionality.'" *Becker v. State*, 363 Md. 77, 92, 767 A.2d 816, 824 (2001), quoting *Yangming Marine Transport v. Revon Products U.S.A., Inc.*, 311 Md. 496, 509, 536 A.2d 633, 640 (1988). Or, stated another way by Chief Judge Murphy for the Court in *Curran v. Price*, 334 Md. 149, 172, 638 A.2d 93, 104–105 (1994), "[i]f a statute is susceptible of two reasonable interpretations, one of which would involve a decision as to its constitutionality, the preferred construction is that which avoids the determination of constitutionality." *See also Edwards v. Corbin*, 379 Md. 278, 293–294, 841 A.2d 845, 854 (2004); *State v. Smith*, 374 Md. 527, 565, 823 A.2d 664, 686 (2003) (Raker, J., concurring); *Montrose Christian School v. Walsh*, 363 Md. 565, 594–595, 770 A.2d 111, 128 (2001); *Schochet v. State*, 320 Md. 714, 725, 580 A.2d 176, 181 (1990), and cases there cited. This

---

12. Article 19 of the Maryland Declaration of Rights provides as follows:
 "**Article 19. Remedy for injury to person or property.**
 That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."

principle furnishes an additional strong reason for rejecting the Court of Special Appeals' interpretations of the federal and state statutes.

## F.

We hold, therefore, that Maryland trial courts have jurisdiction over the private cause of action created by 47 U.S.C. § 227(b)(3). Whether a particular case under § 227(b)(3) should be brought in a circuit court or the District Court of Maryland will depend upon the amount of money involved and the monetary jurisdictional provisions, for civil actions at law for money damages, set forth in the Courts and Judicial Proceedings Article of the Maryland Code. *See Lambros v. Brown, supra,* 184 Md. 350, 41 A.2d 78.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*